(No. 11166.—Reversed and remanded.)

THE STATE PUBLIC UTILITIES COMMISSION, Appellee, vs. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al. Appellants.

*Opinion filed June 21, 1917.*

1. PUBLIC UTILITIES—*what should be considered in establishing a rate for disinfecting stock-cars.* The reasonable expense occasioned by the detention of cars in order to disinfect them after cleaning, together with the engine service therefor, should be taken into consideration by the Public Utilities Commission in establishing a rate to be charged by railroad companies for cleaning and disinfecting stock cars in obedience to an order of the State board of live stock commissioners, but not the expense due to ordinary cleaning of the cars.

2. SAME—*what is an excessive charge for cleaning and disinfecting stock cars.* Charges by railroad companies of $2.50 per car for single-deck cars and $4 per car for double-deck cars for cleaning and disinfecting them in obedience to an order of the State board of live stock commissioners are unjust and unreasonable.

3. SAME—*a rate fixed by the Public Utilities Commission must be based on evidence at the hearing.* Where the Public Utilities Commission fixes a rate after a hearing, the rate so established must be based upon the evidence presented to the commission, as on no other theory can the provision making an appeal to the circuit court of Sangamon county the exclusive remedy for determining the reasonableness and lawfulness of the order be sustained as a valid enactment.

4. SAME—*when the carrier should be required to eliminate improper items of expense.* On a hearing before the Public Utilities Commission to establish a rate to be charged by railroad companies for cleaning and disinfecting stock cars, in obedience to an order of the State board of live stock commissioners, where it appears that the evidence offered by the railroad companies commingles proper and improper items of expense in such a manner that the additional expense resulting from the order of the board cannot be determined therefrom, if there is no other evidence from which the additional expense can be determined the commission should require the railroad companies to eliminate improper items.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

R. B. SCOTT, JAMES L. COLEMAN, F. E. ANDREWS, JOHN G. DRENNAN, C. S. JEFFERSON, W. R. MAYNE, GEO. B. GILLESPIE, and A. B. ENOCH, for appellants.

EDWARD J. BRUNDAGE, Attorney General, GEORGE T. BUCKINGHAM, and FRANK W. SULLIVAN, (STANSBURY & CHARLES, and GEORGE P. BOYLE, of counsel,) for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Sangamon county affirming an order of the State Public Utilities Commission finding that charges of $2.50 per car for cleaning and disinfecting single-deck live stock cars and $4 per car for cleaning and disinfecting double-deck live stock cars are unjust and unreasonable, and that a just and reasonable charge for such services is seventy-five cents for cleaning and disinfecting a single-deck car and $1.25 for cleaning and disinfecting a double-deck car. The appellants are various railway companies affected by the order of the commission.

Prior to November 15, 1915, no charge in addition to that included in the regular transportation rate was made against the live stock shippers in this State for cleaning or disinfecting live stock cars. Shortly prior to November 15, 1915, in order primarily to prevent the spread of the hoof and mouth disease in this State, the State board of live stock commissioners issued the following order to the railway companies operating in this State:

"Notice is hereby given that on and after November 1, 1915, the transportation of all cattle, etc., within the State of Illinois shall be made in clean and disinfected cars. All cars utilized in the transportation of cattle, etc., shall be cleaned and disinfected in accordance with the following regulations of the United States bureau of animal industry, to-wit: All railroad cars used in the intra-State transportation of cattle, etc., shall be cleaned and disinfected with one of the following substances before the same shall again be used in the transportation of live stock:" (Then follows an enumeration of disinfecting substances.)

The railway companies affected by the order thereupon filed tariffs with the State Public Utilities Commission, specifying a rate of $2.50 per car for cleaning and disinfecting single-deck live stock cars and $4 per car for cleaning and disinfecting double-deck live stock cars. These tariffs were approved by the commission, and charges in conformity with the tariffs and in addition to the regular transportation rates were thereafter assessed by the railway companies against the shippers of live stock for cleaning and disinfecting stock cars. Numerous complaints against these additional charges having been received by the commission from live stock shippers, the commission, upon its own motion, on December 16, 1915, notified the railway companies to appear before the commission in Springfield on January 4, 1916, and justify the charges of $2.50 and $4, respectively, for cleaning and disinfecting live stock cars and show cause why such charges should be assessed in addition to the regular transportation rates. The railway companies appeared at the time specified in the notice, and at subsequent times to which the hearing was adjourned, and submitted their evidence to the commission. Exhibits were offered by a considerable number of the railway companies showing in detail the expense incurred in cleaning and disinfecting live stock cars during specified periods after the tariffs had become effective. In each of these exhibits this expense was shown to be made up of various items, as follows: (1) The expense for labor of cleaning; (2) the expense for labor of disinfecting; (3) the cost of disinfectant; (4) the expense for use of tools and appliances in cleaning and disinfecting; (5) the expense for engine service; (6) the per diem charge for car detention; (7) the expense for disposing of refuse; and (8) expenses for miscellaneous items. These exhibits were amplified and explained by the testimony of witnesses offered by the railway companies.

The exhibits and testimony offered by the railway companies disclose a wide variance in the cost of cleaning and disinfecting stock cars, ranging from $2.41 per car for cleaning and disinfecting single-deck cars of the Chicago, Milwaukee and St. Paul Railway Company at Chicago to $6.26 per car for cleaning and disinfecting single-deck cars of the Chicago, Burlington and Quincy Railroad Company at Quincy, and from $3.06 per car for cleaning and disinfecting double-deck cars of the Chicago, Burlington and Quincy Railroad Company at Galesburg to $5.68 per car for cleaning and disinfecting double-deck cars of the New York Central Railroad Company at Elkhart, Indiana. On the other hand, when only the individual items of expense are considered, a combination of these items may be obtained showing that it is possible to clean and disinfect a single-deck live stock car for $1.19, while another combination shows that the cost may amount to as much as $10.68.

The commission found, and properly so, that prior to the time the carriers were required by the order of the State board of live stock commissioners to clean and disinfect live stock cars the law imposed on the carriers the duty of furnishing reasonably clean cars, which duty the carriers admit they recognized and to a certain extent performed, and it must be presumed that the cost of this service was taken into consideration by the carriers in fixing the transportation rates. The evidence shows that since the order of the State board of live stock commissioners was made a more thorough cleaning of stock cars has been required, which has resulted in an increase in the cost for this service which was not contemplated when the transportation rates were fixed, and the commission found that the carriers should be permitted to include the additional expense for cleaning in their additional charges for cleaning and disinfecting stock cars. The evidence offered by the railway companies, however, included the whole cost of

cleaning cars, and there was no evidence offered showing what portion of this cost was occasioned by the order of the State board of live stock commissioners. The commission, therefore, had before it no evidence upon which a finding could properly be made as to the additional cost or expense of cleaning stock cars occasioned by the order of the State board of live stock commissioners, nor does the decision and order of the commission disclose what sum was allowed for this service in fixing the rates of seventy-five cents per car for cleaning and disinfecting single-deck cars and $1.25 per car for cleaning and disinfecting double-deck cars.

The average cost per car, as shown by all the evidence offered, for labor of disinfecting a single-deck car is $.158, for disinfectant $.235, and for use of tools and appliances in cleaning and disinfecting $.075, all of which were allowed and included by the commission in fixing the rates in controversy.

The cost of additional engine service, as shown by the evidence, varies from twenty-four cents per car on the lines of the Chicago, Burlington and Quincy Railroad Company at Eola to $2.44 per car on the lines of the same company at Quincy. The average expense for this service incurred by the railway companies offering evidence before the commission is $.708 per car. The commission found that the railway companies were entitled to an allowance, in addition to the regular transportation charges, for additional engine service when moving cars for the sole purpose of disinfecting them but not for the service in moving cars for the purpose of cleaning them, and this decision of the commission is correct. The evidence, however, fails to disclose what portion of the expense incurred by the railway companies for engine service in cleaning and disinfecting cars was for engine service in cleaning the cars and what portion was for such service in disinfecting cars, and while

the commission in its decision states that a reasonable allowance is made in the rates of seventy-five cents and $1.25, respectively, the decision and order does not disclose what sum was allowed for this service, nor is there any evidence upon which to base a finding that any particular sum should be allowed for engine service rendered necessary in disinfecting cars.

The carriers all claimed that the cleaning and disinfecting of stock cars kept the cars out of service for two days,—one day for cleaning and one day for disinfecting,— and assessed a per diem charge of forty-five cents for such detention. The evidence shows that this per diem charge is reasonable and customary, but the commission did not take this item into consideration in fixing the rates, for the reason, as stated in its decision, that the car detention resulting from the cleaning of the cars was not occasioned by the order of the State board of live stock commissioners, which is correct, and on the further ground that the evidence does not disclose that there has been any detention of cars resulting in loss to the carriers by reason of the time required for disinfecting. The fact that a car is taken out of service for one day by reason of the order requiring the car to be disinfected after it is cleaned is established by uncontradicted evidence, as is also the fact that forty-five cents per day is the reasonable and customary charge for car detention. In the ordinary course of business a carrier necessarily sustains loss by the enforced detention of its cars, and the general superintendent of the Northwestern railway east of the Missouri river testified: "We have experienced difficulty in supplying live stock cars as a result of these cleaning and disinfecting regulations. We have had engines standing out in West Chicago ready to run, without any cars. The detention of the cars through the cleaning and disinfecting process tends to create a car shortage." Under this state of the proof the commission

should have included the charge of forty-five cents for one-day car detention in the rates fixed by it.

The evidence shows that formerly the railway companies disposed of the refuse from stock cars without cost to them but that during the prevalence of the hoof and mouth disease some of the carriers were obliged to make special provision for the disposal of this refuse at a small cost. The commission did not take this item into consideration in fixing the rates complained of, on the ground that the carriers are no longer required to make any special disposition of the refuse. As it was shown that a majority of the carriers offering evidence had incurred no additional expense in disposing of the refuse, and as it is no longer necessary to make special provision for the disposal of refuse from stock cars, the commission was justified in refusing to make any allowance for this item.

So far as the expense for miscellaneous items is concerned, the commission found that the miscellaneous items enumerated by the various witnesses, such as the shifting of temporary tracks occasioned by the cleaning of cars, should not be included in the rates for cleaning and disinfecting the cars. As this expense is incurred as a result of the ordinary cleaning of cars and not from any additional services required by the order of the State board of live stock commissioners, the commission properly excluded it in fixing the additional amount to be charged by the railway companies for cleaning and disinfecting stock cars.

The commission was warranted in finding, from the evidence, that the charges of $2.50 and $4, respectively, for cleaning and disinfecting live stock cars are unjust and unreasonable, but there is no evidence in the record to sustain the action of the commission in fixing the charges at seventy-five cents and $1.25, respectively. On the contrary, the evidence offered before the commission shows that such rates are not reasonable or adequate. Section 41 of the

Public Utilities act provides that whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the rates or other charges demanded, charged or collected by any public utility are unjust or unreasonable, the commission shall determine the just, reasonable or sufficient rates or other charges and shall fix the same by order.   Section 68 of the act provides that any person or corporation affected by any order or decision of the commission may appeal to the circuit court of Sangamon county for the purpose of having the reasonableness or lawfulness of the order or decision inquired into and determined, and that when no such appeal is taken, parties affected by the order or decision shall be deemed to have waived the right to have the merits of the controversy reviewed by a court, and there shall be no trial of the merits of any controversy in which such order or decision was made, in any other judicial proceeding.   The same section further provides that no new or additional evidence may be introduced in any proceeding upon appeal from any order or decision of the commission issued after a hearing but the appeal shall be heard on the record of the commission, and that an order or decision of the commission shall not be set aside unless it clearly appears that the finding of the commission was against the manifest weight of the evidence presented to or before the commission for and against such order or decision or that the same was without the jurisdiction of the commission.   These provisions of the statute clearly indicate the legislative intention to be that where the commission fixes a rate after a hearing, the rate so established must be based upon the evidence presented to the commission, and, indeed, upon no other theory can the provision making an appeal to the circuit court of Sangamon county the exclusive remedy for determining the reasonableness and lawfulness of the order be sustained as a valid enactment.   The carriers offered their

evidence upon the theory that they were entitled to include in the charge for cleaning and disinfecting stock cars the expense incurred in the ordinary cleaning of such cars, and as a result the charges which the evidence shows would be reasonable for the entire service of cleaning and disinfecting live stock cars included certain items for which the carriers are not entitled to make an additional charge. The fact, however, that the decision of the commission was adverse to their contention should not deprive them of an opportunity to show, by eliminating the improper items or otherwise, what a reasonable and adequate rate would be for the additional service required by the order of the State board of live stock commissioners or justify the commission in fixing rates not based upon any evidence presented to or before it. The proof was not in such a state as to enable the commission, from the evidence, to fix reasonable rates for the additional service. When it appeared upon the hearing that the evidence offered by the carriers commingled proper and improper items of expense in such a manner that the expense resulting from the order of the State board of live stock commissioners could not be determined therefrom, in the absence of other evidence from which the additional expense so occasioned could be determined the commission should have required the railway companies to eliminate the improper items in making their proof of the cost of the additional service.

The judgment of the circuit court affirming the order of the State Public Utilities Commission is reversed and the cause is remanded to the circuit court, with directions to set aside the order and decision of the commission.

*Reversed and remanded, with directions.*